UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ADELINA REYES PERSAD,

                              Plaintiff,

   - against—

CHARLES SAMELSON INC.,

                            Defendant.

COMPLAINT
AND JURY
TRIAL DEMAND

      Plaintiff, ADELINA REYES PERSAD, by her attorney, ALAN D. LEVINE, ESQ., as and for his complaint herein, hereby alleges as follows:

## JURISDICTION

    1.      This is a civil action, seeking compensatory damages, punitive damages and attorney's fees.

    2.      This action is brought pursuant to 42 U.S.C. §§ 1981a, 1988 and 2000e, et seq.

    3.      Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343.

    4.      Plaintiff, invoking the pendent jurisdiction of this Court, also seeks compensatory and punitive damages, as well as attorney's fees, pursuant to New York Executive Law § 297 and New York City Administrative Code §8-502.

## VENUE

    5.      Venue is properly alleged in the Southern District of New York in that the acts complained of herein occurred within this District.

## JURY TRIAL DEMAND

    6.      Plaintiff hereby demands a trial by jury of all issues in this action that are so triable.

## PARTIES

7. At all times relevant hereto, plaintiff, ADELINA REYES PERSAD, was and is a natural person, resident in the County of Queens, City and State of New York.

8. At all times relevant hereto, defendant, CHARLES SAMELSON INC., was and is a New York corporation authorized to conduct business in the State of New York, with its principal office for the conduct of business located in the County, City and State of New York.

9. At all times relevant hereto, defendant was in the business of designing and manufacturing fabrics used for furniture coverings.

10. At all times relevant hereto, defendant employed at least fifteen (15) persons on an annual basis.

## JURISDICTIONAL PREDICATE

11. On or about June 18, 2004, which date was within three hundred sixty (360) days of the last act of discrimination alleged, plaintiff filed with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") a charge of discrimination against defendant.

12. On or about December 9, 2004, the EEOC mailed to plaintiff a Dismissal and Notice of Rights, commonly termed a "right to sue letter."

13. This complaint is filed within ninety (90) days of plaintiffs receipt of the aforesaid right to sue letter.

## AS AND FOR A FIRST CAUSE OF ACTION

14. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "13" hereinabove as if more fully set forth at length herein.

15. Plaintiff commenced work for defendant as a customer service representative in or about October 2000.

16. During her period of employment with defendant, plaintiffs job required her to have extensive telephone contact with defendant's customers.

17. During her entire period of employment with defendant, plaintiff received no complaints whatsoever from any officers or employees of defendant with regard to the performance of her duties as a customer service representative.

18. During her entire time of employment with defendant, plaintiff never received a written performance evaluation.

19. In or about January 2004, plaintiff learned that she was pregnant with her first child.

20. Plaintiff informed the manager of her department, Lynn Gilberto, of her pregnancy.

21. Ms. Gilberto instructed plaintiff to speak to Steven Schiff, a vice-president of defendant with the title of office manager, regarding her pregnancy.

22. Upon being so informed by plaintiff, Steven Schiff asked plaintiff whether she planned to work during her pregnancy and if she intended to return to work following the birth of her child.

23. Plaintiff responded affirmatively to both of Mr. Schiffs inquiries.

24. On or about March 12, 2004, plaintiff was given a memorandum, signed by Steven Schiff, that complained about her work performance "over the past eighteen months," and that informed her that she was being placed on notice that if the quality of her work did not improve, her employment would be terminated.

25. Plaintiff acknowledged receipt of the aforesaid memorandum, in writing.

26. The aforesaid memorandum was the first written complaint regarding her work that plaintiff had ever received during the entire time she was employed by defendant.

27. Prior to April 26, 2004, plaintiff informed Lynn Gilberto that plaintiff would have to leave work early on April 26, 2004, in order to undergo a sonogram in connection with her pregnancy.

28. On April 26, 2004, as plaintiff was preparing to leave for her medical appointment, Steven Schiff called her into his office where, in the presence of another manager employed by defendant, one Melissa Ferguson, he informed plaintiff that she was taking too many days off.

29. During this meeting, Mr. Schiff again inquired of plaintiff as to what she intended to do regarding work after she gave birth to her child.

30. Mr. Schiff asked plaintiff if she would be taking time off from work every time her baby got the sniffles.

31. Mr. Schiff told plaintiff that she had been taking too much time off from work and that if she was out of work as a result of her child's illnesses, other employees would have to cover for her.

32. Mr. Schiff continued to question and speak to plaintiff in the aforesaid manner until plaintiff became so upset that she was compelled to terminate the meeting.

33. On the day following the aforesaid meeting, April 27, 2004, plaintiff was handed a memorandum complaining about her job performance and informing her that if the alleged shortcomings in her performance did not improve, she would be terminated.

34. The aforesaid memorandum was backdated, bearing a date of March 11, 2004.

35. Plaintiff was asked to countersign the aforesaid memorandum.

36. Plaintiff refused to countersign the aforesaid memorandum.

37. On or about April 30, 2004, plaintiff was terminated from her employment, without being given any written explanation whatsoever for her firing.

38. During her entire time of employment with defendant, plaintiff never received any document from defendant stating its policy and procedures with regard to complaints of employment discrimination.

39. Plaintiffs firing by defendant, through its agents, servants and/or employees, was an act of discrimination in violation of 42 U.S.C. § 2000e - 2 in that she was discharged from her employment because she was pregnant.

40. Defendant's attempts to justify plaintiffs termination from her employment by alleging that her work performance was substandard were pretextual.

41. Defendant's discharge of plaintiff from her employment was malicious or recklessly indifferent to her federally protected rights.

42. As a result of her aforesaid discharge from employment in violation of 42 U.S.C. §§ 2000e-2, and through no culpable conduct of her own, plaintiff lost her employment and the income therefrom, and, as a result, suffered extreme mental anguish, humiliation and embarrassment.

43. As a result of the aforesaid illegal discrimination in violation of 42 U.S.C. §§ 2000e, et <u>seq.</u> plaintiff has been damaged in the maximum amount provided by 42 U.S.C. § 1981a(3) and, in addition, seeks punitive damages in the amount of One Million ($1,000,000.00) Dollars and attorney's fees pursuant to 42 U.S.C. §1988.

## AS AND FOR A SECOND CAUSE OF ACTION

44. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "43" hereinabove as if more fully set forth at length herein.

45. Plaintiff commenced work for defendant as a customer service representative in or about October 2000.

46. During her period of employment with defendant, plaintiffs job required her to have extensive telephone contact with defendant's customers.

47. During her entire period of employment with defendant, plaintiff received no complaints whatsoever from any officers or employees of defendant with regard to the performance of her duties as a customer service representative.

48. During her entire time of employment with defendant, plaintiff never received a written performance evaluation.

49. In or about January 2004, plaintiff learned that she was pregnant with her first child.

50.     Plaintiff informed the manager of her department, Lynn Gilberto, of her pregnancy.

51.     Ms. Gilberto instructed plaintiff to speak to Steven Schiff, a vice-president of defendant with the title of office manager, regarding her pregnancy.

52.     Upon being so informed by plaintiff, Steven Schiff asked plaintiff whether she planned to work during her pregnancy and if she intended to return to work following the birth of her child.

53.     Plaintiff responded affirmatively to both of Mr. Schiffs inquiries.

54.     On or about March 12, 2004, plaintiff was given a memorandum, signed by Steven Schiff, that complained about her work performance "over the past eighteen months," and that informed her that she was being placed on notice that if the quality of her work did not improve, her employment would be terminated.

55.     Plaintiff acknowledged receipt of the aforesaid memorandum, in writing.

56.     The aforesaid memorandum was the first written complaint regarding her work that plaintiff had ever received during the entire time she was employed by defendant.

57.     Prior to April 26, 2004, plaintiff informed Lynn Gilberto that plaintiff would have to leave work early on April 26, 2004, in order to undergo a sonogram in connection with her pregnancy.

58.     On April 26, 2004, as plaintiff was preparing to leave for her medical appointment, Steven Schiff called her into his office where, in the presence of another manager employed by defendant, one Melissa Ferguson, he informed plaintiff that she was taking too many days off.

59.     During this meeting, Mr. Schiff again inquired of plaintiff as to what she intended to do regarding work after she gave birth to her child.

60.     Mr. Schiff asked plaintiff if she would be taking time off from work every time her baby got the sniffles.

61.     Mr. Schiff told plaintiff that she had been taking too much time off from work and that if she was out of work as a result of her child's illnesses, other employees would have to cover for her.

62.     Mr. Schiff continued to question and speak to plaintiff in the aforesaid manner until plaintiff became so upset that she was compelled to terminate the meeting.

63.     On the day following the aforesaid meeting, April 27, 2004, plaintiff was handed a memorandum complaining about her job performance and informing her that if the alleged shortcomings in her performance did not improve, she would be terminated.

64.     The aforesaid memorandum was backdated, bearing a date of March 11, 2004

65.     Plaintiff was asked to countersign the aforesaid memorandum.

66.     Plaintiff refused to countersign the aforesaid memorandum.

67.     On or about April 30, 2004, plaintiff was terminated from her employment, without being given any written explanation whatsoever for her firing.

68. During her entire time of employment with defendant, plaintiff never received any document from defendant stating its policy and procedures with regard to complaints of employment discrimination.

69. Plaintiffs firing by defendant, through its agents, servants and/or employees, was an act of discrimination in violation of New York Executive Law § 296 in that she was discharged from her employment because she was pregnant.

70. Defendant's attempts to justify plaintiffs termination from her employment by alleging that her work performance was substandard were pretextual.

71. As a result of her aforesaid discharge from employment in violation of New York Executive Law § 296, and through no culpable conduct of her own, plaintiff lost her employment and the income therefrom, and, as a result, suffered extreme mental anguish, humiliation and embarrassment.

72. As a result of the aforesaid illegal discrimination in violation of New York State Executive Law § 296, plaintiff seeks compensatory damages in the amount of One Million ($1,000,000.00) Dollars, pursuant to New York State Executive Law § 297.

AS AND FOR A THIRD CAUSE OF ACTION

73. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "72" hereinabove as if more fully set forth at length herein.

74. Plaintiff commenced work for defendant as a customer service representative in or about October 2000.

75. During her period of employment with defendant, plaintiffs job required her to have extensive telephone contact with defendant's customers.

76. During her entire period of employment with defendant, plaintiff received no complaints whatsoever from any officers or employees of defendant with regard to the performance of her duties as a customer service representative.

77.     In or about January 2004, plaintiff learned that she was pregnant with her first child.

78.     Plaintiff informed the manager of her department, Lynn Gilberto, of her pregnancy.

79.     Ms. Gilberto instructed plaintiff to speak to Steven Schiff, a vice-president of defendant with the title of office manager, regarding her pregnancy.

80.     Upon being so informed by plaintiff, Steven Schiff asked plaintiff whether she planned to work during her pregnancy and if she intended to return to work following the birth of her child.

81.     Plaintiff responded affirmatively to both of Mr. Schiffs inquiries.

82.     On or about March 12, 2004, plaintiff was given a memorandum, signed by Steven Schiff, that complained about her work performance "over the past eighteen months," and that informed her that she was being placed on notice that if the quality of her work did not improve, her employment would be terminated.

83.     Plaintiff acknowledged receipt of the aforesaid memorandum, in writing.

84.     The aforesaid memorandum was the first written complaint regarding her work that plaintiff had ever received during the entire time she was employed by defendant.

85.     Prior to April 26, 2004, plaintiff informed Lynn Gilberto that plaintiff would have to leave work early on April 26, 2004, in order to undergo a sonogram in connection with her pregnancy.

86.     On April 26, 2004, as plaintiff was preparing to leave for her medical appointment, Steven Schiff called her into his office where, in the presence of another

manager employed by defendant, one Melissa Ferguson, he informed plaintiff that she was taking too many days off.

87. During this meeting, Mr. Schiff again inquired of plaintiff as to what she intended to do regarding work after she gave birth to her child.

88. Mr. Schiff asked plaintiff if she would be taking time off from work every time her baby got the sniffles.

89. Mr. Schiff told plaintiff that she had been taking too much time off from work and that if she was out of work as a result of her child's illnesses, other employees would have to cover for her.

90. Mr. Schiff continued to question and speak to plaintiff in the aforesaid manner until plaintiff became so upset that she was compelled to terminate the meeting.

91. On the day following the aforesaid meeting, April 27, 2004, plaintiff was handed a memorandum complaining about her job performance and informing her that if the alleged shortcomings in her performance did not improve, she would be terminated.

92. The aforesaid memorandum was backdated, bearing a date of March 11, 2004

93. Plaintiff was asked to countersign the aforesaid memorandum.

94. Plaintiff refused to countersign the aforesaid memorandum.

95. On or about April 30, 2004, plaintiff was terminated from her employment, without being given any written explanation whatsoever for her firing.

96. During her entire time of employment with defendant, plaintiff never received any document from defendant stating its policy and procedures with regard to complaints of employment discrimination.

97. Plaintiffs firing by defendant, through its agents, servants and/or employees, was an act of discrimination in violation of New York City Administrative Code §8-107 in that she was discharged from her employment because she was pregnant.

98. Defendant's attempts to justify plaintiffs termination from her employment by alleging that her work performance was substandard were pretextual.

99. During her entire time of employment with defendant, plaintiff never received a written performance evaluation.

100. As a result of her aforesaid discharge from employment in violation of New York City Administrative Code §8-107, and through no culpable conduct of her own, plaintiff lost her employment and the income therefrom, and, as a result, suffered extreme mental anguish, humiliation and embarrassment.

101. As a result of the aforesaid illegal discrimination in violation of New York City Administrative Code §8-107, plaintiff has been damaged in the amount of One Million ($1,000,000.00) Dollars and, in addition, seeks punitive damages in the amount of One Million ($1,000,000.00) Dollars and attorney's fees, all pursuant to New York City Administrative Code §8-502.

WHEREFORE, plaintiff, ADELINA REYES PERSAD, demands judgment against defendant, CHARLES SAMELSON INC., as follows:

FIRST CAUSE OF ACTION: The maximum amount provided by 42 U.S.C. § 1981a(3) and, in addition, punitive damages in the amount of One Million ($1,000,000.00) Dollars and attorney's fees pursuant to 42 U.S.C. § 1988;

SECOND CAUSE OF ACTION: Compensatory damages in the amount of One Million ($1,000,000.00) Dollars;

THIRD CAUSE OF ACTION: One Million ($1,000,000.00) Dollars in compensatory damages, punitive damages in the amount of One Million ($1,000,000.00) Dollars and her attorney's fees, all pursuant to New York City Administrative Code §8-502.

In addition, plaintiff demands the costs and disbursements of this action.

Dated: Kew Gardens, New York
       March 1, 2005

ALAN D. LEVINE, ESQ. (AL 3634) Attorney for Plaintiff
80-02 Kew Gardens Road, Suite 1010
Kew Gardens, New York 11415
(718) 793-6363
File No: 1957